We'll hear an argument this morning in Case 2210, Dubin v. United States. Mr. Fisher? Mr. Chief Justice, and may it please the Court, the Fifth Circuit's decision here stretches the aggravated identity theft statute beyond its breaking point. Overbilling Medicaid by $101 may provide fodder for a simple health care fraud prosecution, but as even the concurring judges below recognized, it does not meet any ordinary understanding of the term identity theft. Nor, for two independent reasons, does Mr. Dubin's conduct fall within the terms of Section 1028A. First, he did not use Patient L's name in relation to his health care fraud offense. That statutory element requires that the use of the name be instrumental, not merely incidental, to the fraud. In a fraud case, another way to think about that is it requires the name to be the who in the fraud, that is, misrepresenting who receives services, not merely how or when those services are received. And Mr. Dubin's conduct falls only in the latter camp. Second, Mr. Dubin did not use Patient L's identity without lawful authority. He had permission to use Patient L's identity to bill Medicaid for psychological services, and that's precisely what he did. A contextual perspective confirms this analysis. The federal fraud statute is the predicate here, like the other federal fraud statutes, covers the enormously broad swath of conduct, and therefore Congress has made prison time discretionary in those instances. And as the Federal Defender's Brief explains, the median sentence in a fraud case in this country is 12 months. Twenty-five percent of offenders receive only probation. This statute, by contrast, requires a two-year mandatory minimum. So all indications are what Congress is doing is targeting a particularly egregious form of fraud, use of somebody's name through stealing it, misappropriating it, or impersonating the person, identity theft. But if the government is right, and if the First Circuit is right about how broad the statute is, what it would do is it would transform fraud prosecutions to having every one of them be essentially an aggravated identity theft prosecution, too. And that would thwart Congress's careful design. The Court should reverse, and I'm happy to answer any questions the Court has. Mr. Fisher, you said that Mr. Dubin was authorized to use Patient L's identity. Was Dubin authorized to use Patient L's identity for this particular transaction? Well, I think the best I can answer is yes, he was, in the sense that he was authorized to use Patient L's identity for billing Medicaid. Well, I understand. That's a little broader. Well, you could say that if you drop a car off at a valet, your Porsche. I don't have one, but if you had a Porsche, you'd be concerned about the use of it. And the valet is authorized to drive it, generally, but not to drive it around the city. But to park it. So I don't see how this is any different from that. He's authorized to bill the appropriate charges, but it's not a general authorization. Well, I think, Justice Thomas, the only way to make sense of that element in the statute is to do it more generally. And I think there's a couple of reasons why that is so. And first, let me just start with the record in this case. The only thing the government ever argued in this case was that the unauthorized use was the fact that Mr. Dubin committed a crime with the name. That's at Joint Appendix page 31 and 32. And it's also at the Pet App 66A and 67A. So the Fifth Circuit's theory and the government's theory was simply using the name to commit a crime is what makes it unauthorized use. And so when you turn to the statute, that cannot be right for two reasons. One is because the statute already requires a violation. That's the predicate crime. And this would just make it superfluous. And second of all, remember, just as a matter of grammar, lawful modifies authority, not use. And so what the government would do, and I think with all due respect what your hypothetical would do, would ask whether the item was used lawfully, not whether the person had authority in a general sense. And I think one other analogy that we give the Court in our brief is burglary law, which is a common criminal law thing where you don't ask whether the person had authority to enter the building to commit a crime, because nobody has that kind of authority. You ask whether they had general authority to enter the building. We think that's what the element is doing in the statute. But how general are you, you know, is your analysis? I mean, you use a reference to a hypo about a waiter, and I thought that was very interesting and maybe illuminating in this regard. So, you know, I give the waiter my credit card, and rather than charging me for the food, he charges me, you know, he pays down his mortgage with my credit card. Is that use with or without lawful authority, and why? I think that's probably use without lawful authority, because when you give your credit card to the waiter, you are assuming that the waiter is going to charge you for the meal or at least something from the restaurant. So if the waiter uses it to charge something else, that's an additional transaction that is not authorized. What if he charges me for a bunch of things I didn't order? So it is using for the meal, right? We're not in that other scenario. But I didn't order all these things, and suddenly they're on the bill. So I think that is without lawful authority, but I think it might still not be in relation to the crime. Right, right. So isn't that the same thing as is being alleged here with respect to your client? I don't think so, because if you look at the actual bill in this case, the Medicaid claim, it's at the very last two pages of the joint appendix. It is under the procedure code that says what you are billing for, and the procedure code is exactly the same as whether or not the dispute here is whether the licensed psychologist versus the licensed psychological associate provides the same information. But that's not what he ordered. I mean, that's not what the law orders. I don't see how that's any different than the waiter putting something on the bill that was not, you know, fraudulently that was not actually ordered. Well, I think that the mortgage example is easier, and I think that is why without lawful authority, I mean, I acknowledge that it's challenging to figure out exactly what level of generality you're asking, but I think the best way to do it is to say, did the person give authority to bill for this type of service or this type of product? So I think Justice — Go ahead, sorry. I think, Justice Jackson, if it's just extra food on the bill, that may not be without lawful authority, but if it's something different from the items in the restaurant, then that would be outside of the expectation of the transaction. But that's not — I'm sorry. No, go ahead. That's not identity theft. There's two elements. That's right. And as I understand your description of in relation to, you keep going back to, that means that the name must be a part of what makes the predicate conduct fraudulent. And the name there isn't because the extra food isn't helping the — isn't on the who that person is. They gave you the credit card. You're charging extra food. That's right, Justice Sotomayor. It's like if I ordered a tomahawk steak and they gave me a big sirloin steak. That would be a fraud, but my name isn't used in that way. Right. That's right. And I think it's important to keep — Well, but you needed to use an actual patient's name, right? So it's not just like you got a credit card and you don't care whose it is, and you're just sort of charging it. It had to be, if it's not patient L, it had to be patient A, B, C, or whatever, because I assume they check that this is somebody covered by whatever it is, Medicare or Medicaid. Well, two things, Your Honor. First of all, as a technical matter under the healthcare fraud statute here, there doesn't have to be any name at all, let alone a Medicaid-eligible name on the claim to violate the statute. So as a technical matter, I think his name is not required to violate the statute. I think this is the general point. Does there have to be a name not to violate the statute? Pardon me? Does there have to be a name not to violate a statute? In other words, you're saying you could put any name, somebody who doesn't have any coverage or any relation at all? Yes, it would still be healthcare fraud if you were listing a service you didn't provide or overbilling or whatever else. So the name is not essential to commit the crime. But I would add to that, even if the name were essential to commit the crime, we still think that's too low a bar for in relation to. And as we point out, one example is if all you need is a but-for relationship to satisfy the in relation to element, then every mail or wire fraud case that has a name on an envelope or a name in an e-mail address or the phone number becomes identity theft. Isn't that why the government disclaims that and it comes up with a theory that says a name on an envelope is something that anybody can use, correct? Well, that's right, Justice Sotomayor. That's what the government says. But, again, it's important to distinguish the elements, one from the other. I don't think the government disputes that the name on the envelope satisfies its but-for test under the in relation to element. And so they do have a different answer for the mail fraud hypo there on without lawful authority. They say somebody is assumed to have authority to send an unsolicited letter, but that brings me back to a level of generality question. That answer violates their own rule. Their rule is you have to have specific authorization to the exact thing you did and the manner you did it. So you would not ask whether somebody has authorization to send an unsolicited letter. You'd ask whether somebody has authorization to send a fraudulent letter. And the answer to that would be no, just like here. But why is that right? I mean, I'm still struggling with the waiter hypo, isolating without authority. I understand your point in during an in relation and it probably still wouldn't be triggering this statute because of the nature of it. Fine. But without authority, if the waiter is charging things, you've given him permission to charge it for food. You say that's enough to allow it to be with authority. But I guess I don't understand why if he's charging it for food that I didn't order fraudulently, that is with authority. No, I think if I may have misunderstood then if I said that. As to food on the menu, I think if something is charged that was not ordered, you are giving authority, at least for the transaction where you give the credit card to charge the bill. Now, if the next day the waiter were to charge something else, after you've left the restaurant and after that charge has been done, then I think the authority is expired after you leave the restaurant. But maybe I misunderstood. Where did that come from? I mean, I just sort of – why does it matter whether I'm still sitting in the restaurant or he does it the next day? The point is, what is the scope of my authority? When I give him the card, I'm giving him the card, I think, to charge the food I ordered. If he charges, you know, either the food I didn't order or something on Amazon or pays down his mortgage, aren't all of those scenarios the same with respect to the scope of my authority? I don't think so, Justice Jackson. I think that, as I said to Justice Thomas, you need to say something more than you're billing for something other than exactly what was ordered. Because if that's what the rule is, then it collapses into the requirement that there be a predicate fraud. And this is the general's rule or the circuit's rule within COVR, any misbilling, any time a cashier bills anything wrong, that cannot be right under the idea of misbilling. Just the same line of questions, but, you know, put it in a context that's closer to this one. I mean, suppose, I think you say at one point that if he had charged for cancer services, that would fail your test. Is that correct? I think that would likely be outside of the scope of authority. So if it had more facts in the record, it may be without authority. It would not be in relation to the crime for the reasons you just put in my hand. Yes, so it's outside the scope of authority for cancer services because the patient is only supposed to get psychological services. But, you know, it's the same question as Justice Jackson is asking. Suppose now he bills for 100 hours of sessions with a full-bore psychiatrist, right? Very different both in type and in quantity of the services he actually received. Why should that be anything any less outside of the authority that's been given? I think the answer would be because, again, in that scenario, Mr. Dubin would have authority to bill for those kinds of services. Now, Justice Kagan, to bill 100 hours instead of three would be an egregious fraud for which he could be prosecuted and punished and perhaps severely. But it doesn't make it outside of his authority. What I'm not getting, and it's the same thing that Justice Jackson is not getting, is why you're drawing the line between, you know, here, cancer and psychological, as opposed to drawing the line between the psychological services I received and other psychological services that I never received and indeed didn't come close to. I think the reason I'm drawing the line there with admittedly blunt textual tools that Congress has given us, but the reason I'm drawing the line there is because the only alternative that I think I'd see on the table is that literally every mischarge becomes without lawful authority. Mr. Fisher, I'm sorry. Oh, so it would just sweep in every misbilling, a lawyer who bills 4.9 hours when he worked 4.8, bills for a second-year associate when it was really a first-year, et cetera. Your argument has a lot of intuitive appeal because this does not seem like what one normally thinks of as identity theft. But I'm wondering if you are trying to get too much out of the caption of this provision. And I know it's unfair to ask you about a case that we heard argument in last week, but I know you follow our cases, so I'm going to do it. If you just want to take a pass, that's fine. But we heard a very extensive argument on the meaning of Section 230 of the Communications Act, which has been held by the lower courts to provide pretty broad immunity from civil liability for Internet service providers. But the caption of that section is, Protection for Good Samaritan Blocking and Screening of Offensive Material. So the interpretation that the lower courts have given to that provision goes way beyond what you might think of just by looking at the caption. So, I mean, how far can we go in reading, taking the caption as the gloss on the actual text of the statute? So I don't think the caption can trump otherwise clear language in the statute. I think the high watermark, perhaps, for the title mattering, if I could turn the court back to criminal law, would be the Yates case where the court dealt with the provision of the Sovereign Rights Act that said that any tangible object was covered by the statute. And what the court said was that records, the word in the title, limited, actually, the scope of that. And I think that was perhaps a quite muscular use of the title, nowhere near what we're asking for here. Our point here, which goes all the way back to 1805 and Chief Justice Marshall's opinion in the Fisher case, is that the title can illuminate and make you better understand what the statutory text means. And so the title here, Aggravated Identity Theft, simply gives you a lens through which you can understand these very ambiguous phrases like without loss of authority and in relation to and those sorts of things. The dissenters pointed out that titles are always abridgments, right? I mean, given the complexity of statutory language, you couldn't possibly put everything that statutory language is about into a three-word title. So this seems like an unfortunate abridgment in a way. It doesn't really get at the gist of what the statutory text seems to be about, or it doesn't get to the scope of the apparent scope of the statutory text. But it is just, you know, it's Congress's attempt to abridge a complicated statutory provision. Well, let me say two things, Justice Kagan. First of all, with due respect to the dissent in Yates, I'm not looking to use the title as aggressively as there. Really, there, the word records did limit the language quite directly. Here I'm just saying it gives you a lens through which to understand the words, and I think that is well in the mainstream of cases. Mr. Fisher, when you look at the word theft, I've gone through variety of different state statutes, and theft is always defined as transfers, possessions, or use. So it's not as if the title is not in the very words of the statute. Most theft statutes are using transfer, possession, or using of someone else's property. Correct? I think that's right, and then Flores-Figueroa, the court, actually with this particular statute in mind, looked at the title. So there's precedent on the books from this court as to the usefulness of this title. So why do you rely on in relation to? I rely just on the word use. If I look at it through the lens of the words that are being used, transfer, possession, or use, I think of a theft because that's what's generally defined as thieving, and the question is are you lying about the person who gave you permission, and you're not, correct? I think use gives you all you would need to get there. The Solicitor General itself recognized in this court a couple terms ago that use can mean instrumental to. That was the definition they used from the dictionary in Van Buren, and I think when you couple use with the phrase means of identification, it's a particular kind of instrumental use, and I think, Justice Sotomayor, you could say that's enough. But my point in this court is that when you couple that yet more with in relation to, that cements the notion that you need a nexus and you need something that is instrumental. And, Justice Kagan, I did want to turn back to the second thing I wanted to say on your point about titles, which is that I understand that a title can be an abridgment and a shorthand, and the court has cases that say every last little subsection within a provision is not going to be captured by a title, and we understand that, but that's not the submission that you're being given today. The submission you're giving today is that conduct like Mr. Dubin's is the heartland of identity theft. Their argument is that this very conduct is exactly what Congress intended to capture. And so what they would be saying is that the title, if you disagree with that, and maybe like Justice Alito was suggesting that the words identity theft don't really cover this conduct, that they're suggesting that you should nevertheless read the statute to cover all this thing that doesn't fall under there, this vast swath of conduct. And I think that's what I was trying to say at the end of my opening, is that think about what this would mean for the fraud statutes. You have a two-year mandatory minimum, which is a very, very big deal, both for plea bargaining and back-end sentencing if somebody goes to trial, and that should be strong medicine for particularly egregious frauds. It's not something that ought to be there for every single case for charging. And Mr. Fisher, don't we know that in part because we have another statute that sort of covers this same conduct? So the reason why I thought you weren't necessarily relying on the title is because this seemed to me to be a pretty standard thing that Congress does, that in A7 of 1028, they're laying out the base offense. Yes. Because it uses almost identical terms, right, knowingly transfer, possess, or use, and then we have in connection with unlawful activity. So that's kind of like the base offense. And then in 1028A, we have the aggravated offense, where they say not just in connection with, but during and in relation to the particular enumerated crimes. So it seemed to me to be a familiar structure in penalty statutes, at least, where Congress, you have one that doesn't have a mandatory minimum, that's sort of the base, and then you get aggravated with this different level of egregiousness. Is that close to your argument? Yes and no, Justice Jackson. So yes, in a sense, I agree that A7 is something of a base offense and this is the aggravating offense, but I don't think it's so much with the in connection to versus in relation to language. The court has said in ERISA cases, for example, that those are basically interchangeable phrases. The difference between A7 and this statute is that you have a much, you have a tighter group of predicate offenses. In A7, you have any federal offense or any state offense, and there are federalism consequences for the reading that you're being urged to follow today that we lay out in our brief. The narrowing effect of the statute you have in front of you today is the particular list of federal offenses. Yeah, but it's a subset, right? It has to be, there has to be a difference in terms of the egregiousness of the conduct because the federal offenses in this aggravated is a subset of the other. That's right, but I just want to say the predicate offenses under 1028A are still a quite long list, and like the predicate offense here, the health care fraud offense, and like the mail and wire fraud statutes, there's no required jail time at all for those offenses. So the aggravated identity theft kicker on top of any conviction there, predicate offense conviction, is quite serious and quite a big deal, and that's my point that Congress would have not expected. And that's why you have to have more egregious conduct in order to trigger it, right? That's right, and the more egregious conduct should be more than just incidentally using somebody's name while you're committing that crime. So my point is if the government is right, then every provider who provides an improper bill and commits health care fraud is also committing identity theft. Everyone who sends a letter to somebody else or every cashier who mischarges a bill, et cetera, is also committing identity theft, and I don't think Congress would have wanted to transform those discretionary sentencing regimes for those low-level frauds to all situations where somebody is facing a two-year mandatory minimum. And I see my white light, and I wanted to circle back to one thing before the one-by-one questioning, which is we've talked a lot about without lawful authority, and I just wanted to underscore one feature of the in-relation-to argument that I'm making here, which is the instrumental use, not merely incidental use. Judge Sutton on the Sixth Circuit wrote a very, I think, probably the best opinion in the lower courts I've seen on that issue that describes how the idea is because we're dealing with identity theft, it has to be a lie about who received services or who obtained services, not a lie about how those services were rendered, when those services were rendered, et cetera. And that rule of thumb, I think, is very, very helpful for sorting out the in-relation-to element as it works in the statute here. And it's also just intuitively correct. Remember, whether you want to rely on the title identity theft or whether you want to just look at the words means of identification in the statute itself, you're being asked to decide whether the fraud had to do with misuse of somebody's name, whether the name was instrumental to the crime. And you have a case like this, where the government put it in its own closing argument at pages 31 and 32, this is incorrect billing for services rendered. That's how the government put it to the jury when it described the fraud. In the Fifth Circuit, where the government was asked to describe the fraud, the government said the fraud here is that Mr. Dubin claimed that the services were provided by a licensed psychologist when they were really provided by a licensed psychological associate. That's the fraud here. So when the government is asked in ordinary English to describe what the fraud is, it's described having nothing to do with patient L's identity or who received the services. It's only in its brief when forced to defend an aggravated identity theft conviction that they twist the notion here and say these are fictional services somehow or this is really about who received the services. But if you just use Chief Judge Sutton's heuristic, I think that helps you sort out the cases in a way on the in relation to side that can do all the work you need in this case. Thank you, counsel. It seems to me that one of the factors that might be pertinent is whether it makes a difference whose name is used. Now, the Solicitor General says that here it did because the overbilling for the three hours deprived patient L of three of the eight hours to which he was entitled. First of all, do you agree with that statement of the facts? Well, I agree in the sense that billing for three hours takes three hours away. But remember, patient L did receive services here. And I think the more narrow argument the Solicitor General makes is that billing those services in May instead of April had some effect. But as we explained at pages 1 and 15 of our reply brief, that's just factually incorrect. And the government itself admitted that in the district court, that that argument had been debunked. So you could have cases – can I say one more thing, Mr. Chief Justice?  You could have cases where somebody would be, I think, sometimes deprived of benefits they would have due. We don't disagree that could exist. It's not in this case, but we don't disagree. But those would be case-by-case situations where that could be, I think, better taken into account at sentencing. The statute itself is not key to that kind of harm. That would just be something a district judge in an ordinary fraud sentence could take account of. The representative of the Solicitor General, I'll ask him about the three hours as well. But if it does make a difference how much harm the person whose name is being used suffers, wouldn't that be a significant factor? I mean, if it caused him to lose all his credit and it can take a year and a half or whatever to restore that, shouldn't that be taken into consideration in deciding whether or not this is the sort of identity theft that's covered? I don't think there's any language in the statute that directs you to the type of harm. I think a better written statute might have looked at the type of harm. It's not so much the type of harm that I'm concerned with, but who is harmed. In other words, it makes a difference that this is patient L rather than somebody else. Well, no, I think, Mr. Chief Justice, just take your garden variety fraud case where somebody is swindled out of money. They're harmed. They've lost their money, just like in the hypothetical you're giving, somebody in an ordinary health care benefit case has been deprived of possible insurance coverage or overbilled or the like. So people are harmed quite regularly in these fraud statutes. The question is whether their identity was stolen, to use this sort of colloquial here, and whether the crime involves misrepresenting what they received or how they received it. And so that's what makes an identity theft case different from an ordinary fraud case, not the fact that the victim is harmed, but that they're harmed in the sense that their identity is stolen. Thank you. Justice Thomas? Mr. Fisher, beyond the title, there is no reference to identity theft, right? Those words do not otherwise appear in the statute. Let's assume that the title wasn't there. What would your argument look like? I think it would look like most of what I've said today, which is understanding the broad abstract phrases in relation to and without lawful authority needs to be done through the lens of understanding this is a sentence enhancement for a particularly egregious form of an underlying crime, the predicate offense. And I think what I would direct the Court to are cases like Marinello, cases like Yates, your honest services cases, where over and over the Court has said when Congress uses broad language, we don't construe those literally in the maximalist way. Instead, because we're dealing with criminal statutes, we give them a measured reach. And I think that's underscored in this case, Justice Thomas, to end where I began, where you have a statute that is an enhancement, in effect, for a base offense. So you have to be understanding that you're dealing with a subset or an egregious version of that underlying offense. But didn't we confront a similar problem with use in Smith? I don't think so. I think what you said in Smith were two things. One is you said the phrase in relation to limits the reach of use. And the other thing is you said those words have to be read contextually. And so on that score, I pulled two things out of Smith. What the Court ended up saying in Smith was that the gun there was used in relation to the crime because it was integral to the offense. And I think integral is a synonym for instrumental, which is the word that I've been using today. And I think that just shows that when you take that word in context, it has to be narrowed. And I think all the more so here. So how would this particular crime that's charged have been effectuated without the use of Patient L's identity? Well, I think if the exact same bill had been submitted to Medicaid without Patient L's name on it, it likely would have still been health care fraud. It would have violated Section 1347 because it covers artifices and schemes that attempt to defraud the government. So even if the bill had not been paid, it still would have been health care fraud. Justice Alito? Suppose we think that without lawful authority can plausibly be read in a number of different ways. Then you need something to persuade us that we should adopt your interpretation. Now, one would be something, the force you can get from the title, put that aside. Another would be perhaps some version of the rule of lenity. But you have accepted some limiting principles. So you would not read without lawful authority in its broadest sense, which might be where the rule of lenity would lead. So in the next case, suppose we rule in your favor. The next case involves a different type of service. And the case after that involves a person who was once a patient of this doctor but hasn't been for a while. How would you justify your limiting principles? Well, Justice Alito, let me say a couple things about the other tools I would use to construe it and then how I would justify. So first, beyond the title and the rule of lenity, I would also look at the canon that says all elements of the statute have to have independent meaning. And so it has to mean something more than simply you've committed a crime, committed a fraud, or put in the other words that I was answering questions this morning, it has to mean something more than you've billed for something other than the exact services provided. And so I think that pushes you towards something that narrows it. Now, how I would answer those other cases is I think the in relation to element comes into play there. So if you're billing for one service instead of another, I think at some point the other service becomes so different that you would lack authority to do so. But in relation to, as Justice Sotomayor was saying, would still prevent some of those instances from being aggravated identity theft because you'd be lying about service provided, not who received the service. Now, when you get into additional billing for additional types of things, I think there you could start to be in the actual territory of identity theft. And, you know, I hope what I'm trying to do is give the court some measured understanding of these terms that makes sense of them. With the difficult statute that's been provided, yes, I could say the whole thing is vague or the whole thing should be construed down to a nub of almost nothing. But I'm trying to give the court a sensible understanding that at least gives the terms meaning and context and doesn't just say everything constitutes aggravated identity theft. Thank you. Justice Sotomayor? If you take the government's definition at face value, it's hard to define exactly what their definition is because every time you point to something that seems absurd, they come up with a limiting rule. So the vagueness is a problem. But let's talk about those absurdities. The patient tells the doctor, you can submit this a month later. It's okay by me. A co-conspirator, in other words. On the government's reading, even though they have the permission of the person to use their name in the fraud, that would still be aggravated theft, correct? I think that's right. I'm not 100% sure what the government would say on that, but I think that's right. And that's certainly the argument they ran to the jury and in the lower court. That's what I read in the Fifth Circuit. So they say, as soon as you use the name to commit a crime, you are acting without lawful authority. And that was the argument also if you look at the charging memo in the appendix to the federal statute. I just want to give some of the other absurdities. Tax return. A parent lists their child as a dependent and lies about child care services. There's no way to exempt that out because under the government's broad definition of the statute, because they use the child's name to commit a fraud on the government, correct? I think that's right. And just as Judge Easterbrook recognized that in his opinion dealing with the statute that talked about tax and immigration cases. You talked about the envelope case. You put the name of your victim on an envelope and mail it to them. That's using their name without their permission, correct? Well, it's certainly using their name. And under the government's theory, it's without permission because you're committing a crime. Now, they come up later and say, no, but you're socially permitted to use anybody's name on an envelope. But, again, that's not the way their test works when you look at it in this case and everything else. They ask whether you're permitted to send it for that purpose. I'm defrauding a friend or someone that I'm trying to pretend I'm being a friend with, and I say, you know something, you should enter this deal with me. Bill Gates is a personal friend of mine, and he taught me everything I know. Would that be aggravated theft? I think so. I think that's the problem here is that at least when you have any situation where, this goes back to the Chief Justice's questions, where you can say you couldn't have committed that fraud the way you did without using the name, then I think that falls within the government's test. So the issue of vagueness permeates the statute on both sides, potentially. I think that's right. I think the government's argument, or at least the Fifth Circuit's rule, is vague in the sense that it seems to cover basically everything, and then it leads into the line of cases about vagueness that have just absolute standard disdiscretion left in prosecutors. What principles of ours, besides lenity, would lead us to accept your narrower definition as opposed to the government's narrow individual doctrines? Government seems to be creating exceptions. Right. Well, I think, for one thing, constitutional avoidance. So when you do start to come up against vagueness, that's another principle that is operating in the background. For some of you, I think I would say the title I think does carry some weight. And I think consequences. You know, the Court has had a lot of cases in recent years. I gave Marinello as one example. Van Buren was another recent example. Some of the honest services cases are examples where the Court has said not so much the rule of lenity, but they've just said understanding what Congress meant by words, we would not assume Congress would sweep in vast arrays of conduct without doing it clearly. And so I think, as Justice Breyer put it in Marinello, we use interpretive restraint in that setting. And I think that's what I'm asking the Court for today. Thank you. Justice Kagan? Mr. Fisher, you referred us to what you call Judge Sutton's heuristic, and I just want to make sure that I understand how that would work. And maybe I'll ask it in reference to what I think is the toughest line that you're drawing, which is on the one hand, if you bill for cancer services, that falls within the enhancement. But if you bill for psychiatric services that weren't rendered, it doesn't. So to me, neither of those seems very much like a who. They both seem like what's. So how does Judge Sutton's heuristic work to draw that line? And if it doesn't work, doesn't that suggest that we need something else? So two things, and I want to point out I think there's a little bit of a misconception in your question. So the two things is the heuristic that Judge Sutton lays out is who on the one category versus how or when on the other. And so those are the easy cases, and that's what this case is. This is just a how or when case. And just like the stretchers case that Judge Sutton was deciding, the ambulance service that lied about whether stretchers were required, that's a how, the nature of the services provided. That's what this case is. Well, I mean, there's certainly a when in this case, but there's also a what. It's like, which psychiatric services did you get? And that's the same for the cancer services. And how does this supposed heuristic, you know, separating out three-letter words help us? So two things. One is I think this is not a what case because the procedure code used is the same, whether it's a licensed psychologist or a psychological associate. Now, even if it were a what case, what services were provided? Okay, so if the code were different for, let's say, a full-fledged psychiatrist, that would make all the difference? It might. I'm just saying this is the easy case, if you want to take the easy case. I think the what cases, which is what you're asking, that's what the cancer hypo is, and that's where the government moves in its brief to the what category, which I agree with you, Justice Kagan, is the hardest category. So that's the in-between category between the who or the how and the when. Okay, so you're saying that the Sutton heuristic has nothing to say about that? I don't think it speaks directly to it. So it's separating out who on the one side from how and when on the other. And I think, and this gets to the misconception, I'm agreeing that the cancer hypothetical would be potentially without lawful authority. That might be without lawful authority. It still would not be in relation to, and it still wouldn't violate the statute. So I think what you should do is the best way to read the statute is that the who cases, the lies about who received the services are on one side of the line, and all the other lies about how, when, or even what are on the other side of the line. And, again, I'm not saying those aren't fraud. And sometimes they can be egregious fraud, if it's 100 hours instead of one, or if it's the Rolls-Royce version of the service instead of the base level. Those can be fraud, and they can be punished quite severely, but they're not lies about who received the services, and they're not using the person's identity as the core instrumentality of the offense. Thank you. Justice Gorsuch? So, Mr. Fisher, you've talked about various canons that you think might help us resolve this case, but one that hasn't been mentioned much is the federalism canon. In Bond, for example, we make clear that we don't normally interpret federal law to swallow up vast swaths of state law authority, as traditionally understood. And I wanted to return to the question about the impact of A7 on that. If the government's theory is correct, and every time I order salmon at a restaurant, I'm told it's fresh, but it's frozen, and my credit card is run for fresh salmon, that's identity theft. What's left of state law? I don't think much, Justice Gorsuch, and with all due respect to the government, I don't think they give an answer to our point that if they're right about what in relation to means, and they're right about without lawful authority, then every state law offense that uses somebody's name becomes identity theft. Whether it's in a restaurant billing scenario, a health care billing scenario, or lawyers who round their hours up, and I'm sure nobody in this audience has ever done that. Right, and I want to underscore, we could think of even the salmon example as wire fraud, if the credit card is run through, so there's a federal predicate offense. But put aside the federal statutory crime that might be committed, all state misrepresentations become federal crimes under A7. That's right. And I think we give other examples in our brief of just using somebody's name in the course of committing the crime, that would all be chargeable as federal identity theft. And remember, the way these statutes work is I've called them enhancements, which in a sense they are, but they're truly standalone crimes. So a federal prosecutor could charge that, even if the predicate offense under A7 was nothing more than a state law offense. I guess my second question is, do we need to decide who's heuristic is right if we reject the government's view? Wouldn't it be enough for the day to say that this reading of the statute was overbroad, and that it cannot possibly mean that every time I order fresh salmon at a restaurant and get billed for – given frozen salmon and billed for fresh, that cannot be federal identity theft? Yes. And to simply reject that principle. And as I understand it, there are at least two heuristics that are knocking around in the lower courts. One is Judge Sutton's thought, and the other is Judge Easterbrook's thought in the Seventh Circuit, which is slightly different when I read it. And you've kind of advanced echoes of both. Do we need to decide between them, or perhaps they're both right? Can't we just reject the Fifth Circuit's? I think that would be enough. Justice Gorsuch, I've pointed the court a couple of times to the government's closing argument, which I think is the best encapsulation of what it put in front of the jury. And its argument was that you cannot use somebody's name to commit a crime. That's what unlawful authority means. And if you just reject that, that was their only theory. They provided no other evidence that Mr. Dubin acted beyond the scope of authority. And maybe this is also responsive to Justice Kagan and some of the other hypotheticals, all the things about could you bill for this, could you bill for the other. Even the contract was not introduced by the government in this case. The only theory they ran, and this is also reflected in the charging memo and the appendix to the Federal Defender's Brief, this is the argument that prosecutors have been circulating with each other, is that all you have to do is prove to the jury that an underlying crime was committed and you're home. And if you reject that, that's enough to overturn the theory. And if that were right, maybe there's another can besides federalism that we can mention, and you've alluded to it as well, which is vagueness. What notice does a statute like that provide to the world to every waiter in America who misbills a client for the food he purchases? I think you start to get into very serious vagueness problems here because of the incredible breadth, which I think, as we put in our brief, are compounded by the kind of misleading nature of the title. If somebody were looking at the table of contents of the U.S. Code, if that waiter were looking at the title of the U.S. Code, that waiter would probably not see, oh, I better look and see what identity theft is before I do that. Thank you. Justice Kavanaugh? In response to Justice Kagan, you said that the cancer hypothetical would still not fall within the statute because it wouldn't meet the in relation to requirement. Can you just spell that out for us? Yes, Justice Kavanaugh. The reason it wouldn't is because it would be a lie about what services are provided, not who received those services. Or if it were a product, about what product was sold, not who received the product. And that makes sense under the statute because we're asking whether the person's name, whether, as the statute puts it, the means of identification was used in relation to the offense. And so the critical nexus in the instrumentality requirement in the statute would not be satisfied. And I think the government only responds to that in its brief, Justice Kavanaugh, as well we could kind of play word games and we could say, well, these cases about what services are provided could also be thought of as lies about who received them. But if you just use ordinary speech and imagine complaining to somebody the next day about being charged for something different than what you ordered, you probably wouldn't say, you'd say, they charged me for the wrong thing. You wouldn't say they stole my name and used my name improperly. Thank you. Justice Barrett? I have a question that's similar to Justice Sotomayor's. So you didn't make much of this justum generis in your brief, but I looked at transfer and possess. You know, transfer to sell or give, convey or remove from one place to another, possess, you don't have possession of. It seems to me that you can't transfer or possess unless something is stolen. It seems to me like that's a tie to the title, to identify theft. And so it seems to me that if you're trying to interpret use, which is a really broad word, in the context of that trio, that that serves a narrowing function. Why didn't you advance that argument? I think some lower courts have pointed that out and we agree with it. I think, Justice Barrett, the only thing that I would acknowledge is I don't think it's a requirement under the statute that something be stolen. I think you can get something legitimately and then misappropriate it. So there are examples in legislative history of government workers who get somebody's social security number by way of their ordinary work and then they misuse it to do other things or sell those security numbers to somebody else. So we give a hypothetical in our reply brief of a landlord who gets credit information of a would-be tenant and then misuses that credit information. So I think that's where uses comes in for this narrow slice of misappropriation cases. But they're still for entirely fictional services where you are, in effect, making the identity the sole driver of the offense. And I agree with you. And it seems to me that that's the different work that use does to transfer in possession or the kinds of cases that you're talking about. But it still seems to me that all of those verbs have as their focus the unlawful possession of the identity itself, and that's the who in Judge Sutton's heuristic. Okay, second question. I appreciate Justice Gorsuch's point about we can decide the case narrowly by just saying whatever it means this is wrong. But what if we wanted to rule in your favor? What does the holding look like? Because it can't quite be Judge Sutton's heuristic, right, because it won't solve all the cases. Maybe it solves some heartland cases. You've said it must be instrumental, not incidental. But you could say Patient L's identity was instrumental because he was a Medicaid recipient, and so without Patient L's name on the form, the crime couldn't have been completed. So I'm not sure instrumental, not incidental will kind of do the work for the lower court having decided the case. So tell me what the decision line should say. So I think you could do two things, and it might be quite helpful to the lower court if you talked about both elements. I think the without lawful authority element, as I described with Justice Gorsuch, can be decided the way we talked about, and that would be enough to reverse. But if you look at the in relation to element, which lower courts are also struggling mightily with, I think I agree with you, Justice Barrett. Instrumental is a standard. It's a more descriptive term, but it could use some fleshing out. And I think that's where the Judge Sutton heuristic, forgive me for returning to that. Actually, that's the work it's doing. No, I like Judge Sutton. I'm fine with that. That's actually the work it's doing. It's saying when is something, he used the word integral, when is something integral? And his heuristic is enough to decide this case in relation to. I mean, this case is remarkably like the one he described, which is the example of the ambulance operator that lied about using stretchers when they did the service. And he said if you lie about the nature of the services provided, not who received those services, you are not committing the crime in relation to, you're not using the name in relation to the crime. And that would totally decide this case. Thank you. Justice Jackson? So you've given us a number of ways in which we could rule in your favor and things we could look at and rely on. I was trying to keep a list. We have title, the rule of lenity, all the statutory terms of meaning, federalism canon, and then there was this talk of constitutional avoidance. And I am interested in particular in sort of the species of constitutional avoidance that I was bringing up with you before, which basically looks at this provision in context and in relation to A7. In other words, this is an aggravated penalty, and we have a mandatory minimum that attaches. And so don't we have to believe that it is calling for something more than just use in connection with the crimes? I don't think so, Justice Jackson, and I hope I can be clear on this. The difference between A7 and 1028A, which is what you have here, is the list of predicate offenses. No, I understand. You said that before, but I guess what I'm saying is the list of predicate offenses in this statute, in this one, is a subset of all federal crimes, which is in the other statute. Right. And if I'm wrong about this, then we have two statutes that would be calling for exactly the same thing. And the second one gives you a mandatory minimum. And I feel like there's a constitutional problem. If the executive could look at these two statutes and arbitrarily pick between the two, some people get the one with the mandatory minimum, some don't. If their elements are exactly the same, you would have that problem. So the A7 says use, you know, without lawful authority, same language, a means of identification, right, in connection with the crime. And this one says use everything is the same during and in relation to the crime. And it's the list of crimes, I get that, but don't we have to believe that what Congress is calling for to attach the mandatory minimum is something more than just in connection. So now I'm following you, forgive me. I think that's one way to answer. That would be one way to compare the two statutes and read in relation to the way that I'm describing. I think the pushback from that could be, well, they could still mean the same thing, and all you're dealing with then is a lesser included offense, which doesn't create a constitutional problem. But I think then my reply to that would be you nevertheless, under the government's theory, are left with this incredibly broad statute that makes every fraud prosecution also punishable as aggravated identity theft. And it's vague to know in the world when you would get the mandatory minimum or not. Exactly. And so that creates exactly the kind of standardless sweep, to use the term from this Court's cases, that the due process clause is directly concerned with and gives you very serious pause. Thank you. Thank you, Mr. Fisher. Mr. Shirey. Mr. Chief Justice, and may it please the Court. I'd like to start with the hypothetical that Justice Jackson was discussing with Mr. Fisher about the waiter who uses a customer's credit card to bill for something that the customer didn't order. Let's say the customer ordered steak, and the waiter uses the credit card to ring up a bottle of wine as well. And I think the discussion earlier today established that the waiter was acting without lawful authority. He had the authority to use the credit card number to bill only for the food that was ordered. He didn't have the authority to use it for other things, whether it be wine or Amazon.com products or paying down his mortgage. But I think, Justice Sotomayor, you had suggested that the in relation to element might do some work there and might keep that hypothetical out of the statute. I don't think that's correct. And the reason it's not correct is that no matter how you define in relation to, you can say substantial nexus, you can say instrumental to, integral to, facilitates, further. On any of those definitions, the use of the credit card number is going to be in relation to the fraud of charging that credit card account improperly. Of course, you can't charge a particular credit card without using that credit card number. And that's analogous to the relationship that's at issue here. In this case, you can't possibly charge a particular Medicaid account fraudulently without using that patient's Medicaid number. And therefore, the use of the Medicaid number is on any reasonable definition in relation to that particular fraud. Now, I understand the argument on the other side about the title. Maybe, as Justice Alito pointed out, that doesn't seem like identity theft. But the test that this Court should be applying is not does it seem like identity theft. Congress translated the concept of identity theft into specific textual elements in the statute. And because that hypothetical, like this case, falls within those elements, that's covered by the statute. I'll turn to the Court's questions. We're talking about very broad language. When I first came on the Court in ERISA, we wrestled with in relation to, and of course in Smith and some of the others, we wrestled with use. I'd like to see how far you will go with this. Let's say the only allegation here involved the rounding up from 2.5 hours to 3 hours. Would that be sufficient to violate this provision? Yes, Justice Thomas, and I appreciate that that may seem an unattractive result. Well, I think unattractive is an understatement. It is nevertheless the correct reading of the statute. The reason that result seems unattractive is that the fraud in that context is a relatively small fraud. It's not a big fraud. But it's inherent in this statute, which has a flat two-year penalty regardless of the size of the fraud in a particular case. The small fraud is going to be punished the same way as the big fraud. How would you distinguish in this context between a mistake and a fraud? Let's say it's 2.75 to 3.0. Well, we still have to prove that there was a fraud. That has a scienter element. We have to prove that it wasn't just an accident, that the person had the requisite fraudulent intent. So if we couldn't prove beyond a reasonable doubt that the person fraudulently rather than accidentally overbilled, then we wouldn't have the predicate crime in the first place. I mean, we're dealing with small amounts in this case. So it doesn't seem inconceivable that you could be successful in prosecuting someone for a smaller amount. First, with respect to this case, it's true that this one claim was $338, but the entire conspiracy the district court found involved a lot of claims, $282,000. Second, I acknowledge, yes, it is possible that when it's a small amount, we could still prosecute, but we'd have hurdles that we'd have to overcome when it's a small amount. It's going to be harder to convince a jury of fraudulent intent when the amount is extremely small. I take, however, the point of the question. Counsel, it seems to me you've just given up the ghost and clarified things substantially, that every time anyone overbills for anything, that triggers this statute. And all you have to prove now may be small, as the amounts here were $338, or it might be rounding up, a lawyer rounding up his hours to the next tenth of an hour, but that is still identity theft because you are using somebody's identity in a way that is unlawful and perhaps arguably exceeds their permission. If that's true, where do we stand in terms of federalism, given that A7 speaks in much the same language, and we would seem to federalize pretty much every state misrepresentation claim? Where do we stand in terms of vagueness, notice to the world, fair notice to the world? I'm not sure most waiters in America appreciate that they're committing identity theft when they bill for that bottle of wine. Let me start with federalism and A7. A7's language is not the same as the language of 1028A. A7 uses the phrase, with intent to commit, or aid or abet, or in connection with. And you could read in connection with differently from during and in relation to. We could, but if we read them the same as this Court has done in the past, then we'd have a serious federalism problem, wouldn't we? If you read them the same, you'd be creating a federalism problem that you could avoid by reading them differently. And it seems a bit of a question. Well, but it's necessary, really, in connection with, in relation to. Who draws a distinction between those words? Let me explain why there's a distinction. First of all, just so we're clear. Sorry to interrupt. Well, okay. Suppose we did read them the same way. Then you would concede there would be a federalism problem. No, I wouldn't concede that because there's also a jurisdictional element in 1028A7 that's contained in 1028C. And that jurisdictional element ensures that every prosecution is within the federal government's authority. It has a list of elements that must be satisfied in order for an A7 prosecution to be brought. And I grant one of them affects commerce. So if he runs the credit card and it goes across state lines, good to go. But this court has held that. Can't you concede that's a serious federalism problem if we were to read those terms the same way? No, because this court has held that that's within the scope of the Commerce Clause. So it's not a federalism. Every fraud in America is within the scope of the Commerce Clause, counsel. If that's a problem, Justice Gorsuch, it's attributable to the court's Commerce Clause cases and not to this court. All right. It's our fault. Fine. How about the vagueness problem, then? Might I finish explaining? Well, I'd move on to the vagueness problem. You know, what about the vagueness problem? What notice does this provide to people in the world that they're committing a federal felony? Again, Justice Gorsuch, you can avoid that problem by re-examining it. I understand that. Put that aside. I asked you to put that aside, counsel. Please do so. Answer my question about vagueness. The court's vagueness precedents are concerned with ensuring that law-abiding people aren't trapped into being prosecuted for a violation that they couldn't have anticipated. And that problem doesn't arise with respect to either of these statutes, because these statutes apply only if an individual has committed a predicate crime in the first place. Well, we know, though, that the law has to provide notice not just that you've committed some crime. It has to provide notice to the bad man that there are more consequences for worse crimes. And I don't doubt that the waiter over bills for that bottle of wine knows he's committed some sort of state misdemeanor, maybe even felony. But does he know that he's committed a federal offense, too? The way he would know is by reading that statute and by looking at the elements and finding that his conduct fits within the most natural reading of those elements. Mr. Suri, can I ask you to do almost the opposite of what Justice Gorsuch was just asking you? And that is to assume that the Statute A-7 and 1028A are distinct. Yes. All right, so can you just help me to understand how your first, how your facilitates view of 1028A is different than use in connection with? I'm not taking a definitive position on what exactly in connection with would mean, because that's not presented in this case. I'm suggesting the court could interpret it differently. But what I'm asking is, this is kind of like, I think, creating another constitutional problem that I hope we can focus on, which is, to the extent they are the same, then I don't understand why we don't have a serious due process problem, because we have a mandatory minimum with respect to the second one. So unlike Mr. Fisher's suggestion that the second one is a lesser included offense, it is, in fact, an aggravated offense. It is more serious because you get two years tacked on to your underlying offense as a result of it. So is it the government's position that you do not have to have more egregious conduct or behavior to trigger the two-year man-man? It is more egregious because the predicate offense has to be more egregious. I don't think that's how it works. It doesn't. Mr. Fisher says, look at the list of predicate offenses. It's like every fraud in the world. And you've just admitted in response to Justice Thomas that it could be a teeny, teeny fraud. So it's not more serious just because of the predicate offense. It would seem to me it would have to be more serious because of the way in which you're using the name. No, I respectfully disagree with that. It is a subset of crimes that triggers 1028A. But if those crimes are broader and less serious than other crimes you can put into A7, you're still believing that it's a lesser included offense?  There's a more serious set of crimes than all crimes whatsoever. You can violate 1028A if the predicate crime is a felony. You can violate 1028A7 if the predicate crime is a misdemeanor. So yes, 1028A is going to be more serious than 1028. And there's no due process problem. Does it make any difference to your position if the predicate crime always requires a misuse of identifying information? In other words, my conception of the identity theft crime is that it provides additional punishment. But what if the underlying offense always requires a misuse of identity? That can happen under the statute with respect to other predicate offenses, though not this one. For example, one of the other predicate offenses is Section, I think it's 1424, if I might be misremembering the number, but it's impersonating another person in an immigration proceeding. Now, that's always going to involve using another person's identity even on Mr. Fisher's definition. Well, doesn't that suggest that you ought to have a narrower definition of the aggravated identity theft provision? No, Mr. Chief Justice. What it suggests is that Congress picked out a specific set of predicate crimes, and it picked those out where the aggravated identity theft elements are more likely to arise than with respect to other crimes. So it shouldn't be a surprise that with respect to this particular set of crimes, there are going to be some where the elements of the statute are met more frequently. But, of course, we don't run into that problem here because there are a lot of different ways you can commit health care fraud without using a means of identification of another person without lawful authority. Well, what are those ways? Because it strikes me that the delta here is very slim. In your brief, you had some hypotheticals which were more or less outlandish, but that when you really get down to it, all health care fraud is done using people's names. I'll give some of the less outlandish hypotheticals then. First, frauds committed by patients. For example, if someone lies about his income in order to become eligible for Medicaid or lies about whether he smokes in order to get a lower health insurance premium. Second, health care frauds committed by pharmaceutical companies. Let's say a vaccine manufacturer commits fraud in connection with a contract to provide vaccine doses. Or a prescription drug manufacturer commits fraud when negotiating with Medicare about prescription drug prices. That doesn't involve individual patients. Third set of examples, frauds by providers that don't involve specific patients. Let's say the provider here lied when he was enrolling for Medicaid in the first place. Or the court had a case last year about the disproportionate share fraction reimbursements under Medicare and Medicaid. Let's say there's a fraud in connection with that. That's not connected with any specific patient. Fourth set of examples is honest services health care fraud. Let's say an insurance executive accepts a bribe or a kickback. Again, that doesn't involve a specific patient. So that's very helpful. Are you saying that any time that there's a provider that bills Medicaid for services, it's covered? Almost. You could imagine the fictitious patient or other hypotheticals like that. But yes, almost all of those cases would be covered. I grant that. What do we do about the incongruity that under Flores-Figueroa we said fictitious people are not covered by this? That's right. I'm conceding that fictitious people aren't covered. So we're not going to cover fictitious people under our case law, but we're going to cover the Stretcher case. Justice Sutton's Stretcher case. Yes, but there's a reason that Congress drew that distinction. When you're billing to a fictitious patient, you're not causing a harm to a real person. I actually don't think that the patient thinks that his identity has been stolen. He may think rightly that you cheated the government or your health care insurance, but I doubt very much he thinks that you misused his name or transferred his name or that you committed identity theft with his name. I have already accepted that you could say this doesn't feel like identity theft, but that's not the test, whether the patient feels like his identity has been stolen. The test is the elements set forth in the statute and the conduct here. But the elements in the statute are vague in relation to uses authority, and why doesn't the title then give us a helpful clue about how broadly to read those somewhat elastic terms? I certainly accept, Justice Kavanaugh, that if you thought the statute were ambiguous, then the title is a useful clue in resolving that ambiguity. Well, isn't in relation to, for example, an inherently, I guess, vague term in the sense that everything can relate to everything else? You have to make a judgment call about the unit of or the level of generality you're going to read it, and to help guide us where to draw the line there, the title can help pinpoint a place where to do that. I agree with that in principle, but there's a better source of guidance to look to than the title, namely this Court's interpretation of 924C. 924C was the model for this statute. It used the same language used during and in relation to. In that context, the Court has interpreted in relation to to mean have some purpose or effect with respect to the predicate crime. And since Congress adopted the statute modeled on that other statute, the most sensible thing to do, I would submit, is to interpret in relation to the same way. Now, Mr. Chief Justice, you had said that you wanted to address a question to me about the three hours of harm and whether there really were three hours of harm. I'd like to address that. Yes, there were. There's a factual dispute between the defendant and us about whether Medicaid billed on a rolling 12-month basis or a calendar year basis. The evidence supporting our view is set forth at Joint Appendix Pages 19, 20, and 27. And since this is a sufficiency of the evidence challenge, you should look at the evidence in the light most favorable to us. In addition to that, even if you resolve that factual dispute the way they proposed, it would make no difference, because it would mean that instead of saying three hours of testing are taken out of the rolling 12-month period, patient L would have lost three hours of testing out of the calendar year period. Now, Justice Gorsuch, I must get back to this question of in connection with the federalism problems. Let's skip that. I think we've beaten that horse. But I do have another question for you, since you looked over here. Maybe you regret that. I regret it already. If we were to reject the government's view, so, yes, you are going to regret it, is there a reducible core? Is there an alternative? Is there a backup? If we reject the idea that every time a real patient's name is used in overbilling, that that is automatically identity theft, which is your position, is there something else that the government wishes to purvey today? Yes. If the court is to rule against us, then I would urge the court to adopt the Sixth Circuit's interpretation that has been attributed to Judge Sutton, even though he was bound by circuit precedent in adopting that. Let's not diminish our colleagues, okay? But you then are where Mr. Fisher is. There's an alternative. All I'm suggesting is we shouldn't be blaming Judge Sutton for that test, which we think is incorrect. But the reason we suggest that that test would be better than the without lawful authority alternative that Mr. Fisher has suggested is that the without lawful authority test that he's proposed raises all sorts of complications about where to draw the line in terms of the level of generality at which authority is being assessed. And the Judge Sutton test avoids those concerns. What's the justification for that? What exactly is the Sixth Circuit Sutton test? The Sixth Circuit test is a distinction between lies about who received a service and lies about how and when the service was provided. We don't think it's justified, which is why we think we prevail in this particular case. But it's the least unjustified approach if you were to rule against us. Well, isn't the who question answered by the statutory term another person? No, I took the test that the Sixth Circuit was putting forward to be that the false statement has to be a falsity as to who received a particular service. So they're not interpreting the term another person. They're interpreting the term in relation to in that context. Do you dispute that this 1028A is an aggravated nature of the commission of this crime? No, I don't dispute that. All right, and you suggested in response to me earlier that the aggravation comes from the list of offenses. Yes. Do you agree, as I'm looking at the list of offenses, that it includes things like mail, bank, and wire fraud? Yes. And so you're suggesting that the aggravation alone has nothing to do with the way in which you use. You can use it in the same way as triggering A7 in connection to, but it's just the fact that you're committing mail and wire or bank fraud that subjects you to the two-year amendment? Yes. Let me summarize the point in the following way. If you use someone's identity with respect to a federal misdemeanor, that could be covered by 1028A7. If you use it with respect to a federal felony that's on that list, such as mail fraud, then that's aggravated identity. Yes, but A7 also covers felonies. State felonies. Yes. Unlawful activity that constitutes a violation of federal law, and I appreciate that that sleeps in misdemeanors, but you're suggesting that the two-year mandatory minimum penalty in this area of fraud is only distinguishable on the basis of the fact that you could be charged with a misdemeanor under A7? That's the difference? That's the delta between the two? That is the difference between the two. And remember, A7 in one respect is harsher than 1028A because it has a five-year maximum penalty. So under 1028A, you're getting... Of course, that's not the function of mandatory minimums. I mean, they're not really... I appreciate that it has a higher top level, but Congress, when it enacts a mandatory minimum, is constraining judicial discretion with respect to what you can impose as a penalty. And usually, Congress does that in situations in which it has identified substantially more serious or more egregious conduct on the part of the person who is subject to the mandatory minimum. And what's strange to me about your argument is that you're saying, in this situation, unlike many others, we don't care about that. We're not focused on the fact that it's necessarily more egregious. We're just looking at the list of offenses and to the extent a misdemeanor could be charged in the other world, that justifies a two-year mandatory minimum in this one. Let me take the worst version of that hypothetical for us and say Congress has enacted two identical statutes, and one has a mandatory minimum and one doesn't. And it's entirely up to the prosecutor which of those charges is brought. This court has held specifically that that is not a violation of the Constitution. I believe the case is United States against Batchelder, if I'm remembering correctly. All right. I appreciate that. But here we don't have two entirely identical statutes. We have ones that, in fact, use different terms. So why would we interpret them to be identical? I mean, even if we said that's okay to do, we have in connection with in one, and we have during and in relation to in another. And you're asking us to interpret during and in relation to as if it is the same. I'm not asking you to interpret as if they're the same. I think that was the point of my colloquy with Justice Gorsuch. But you can't tell me what the difference facilitates makes. Your definition is facilitates. And so all I want to know is why is that any different than in connection with? In connection with is used alongside with intent to commit or to aid or abet. And you could read that as used in generous to be similar to with intent to commit or to aid or abet. And you don't have that contextual limitation with respect to during and in relation to. In the phrase during and in relation to, the word during is what is doing most of the limiting work. The word during is saying that the use of the identity must be contemporaneous with the crime. So that's already limiting the universe quite a bit. Now, within that context, relation to simply serves to exclude fortuities, cases in which it's a coincidence that the name is used at the same time as the commission of that particular crime. Speaking of a use of generous, could you address the argument regarding the application of that canon to the statutory terms use, possess, transfer? Yes, Justice Alito. I think that the presence of the term possess strongly supports our interpretation. And the reason is that it would be quite odd for this statute to prohibit the passive possession of another person's name, to prohibit a particularly egregious type of use, meaning we use for the purpose of impersonation, but to cover nothing in between the active uses that fall short of impersonation. There's no reason to think Congress would have included that discontinuity in the statute. In addition, I think Justice Barrett raised the question that transfer and possess could be read to refer to circumstances in which the information is stolen. And I agree with that. But use has to be doing some independent work. If you've stolen the information, you've already possessed it without lawful authority. And in order to give use some independent work to do, you have to make sure that there isn't a stealing element built into that. Thank you, Counsel. Justice Thomas, any further? Justice Alito? Justice O'Leary? Justice Kagan? Mr. Suri, just on this question of without lawful authority, different kind of issue, in your brief, you say that means if he uses it with permission, no, sorry, if he uses it without permission, or here's what I want to ask you about, if he uses it with permission, but the conferral of that permission contravened some other law. So suppose somebody had said to this doctor, the patient had said to this doctor, you know, you gave me five hours of service X, but you've been a great doctor. I'm happy for you to bill 20 hours of some more expensive service. Would that count as without lawful authority or not? We would say that we could prosecute that case, but that's a more difficult case and would raise issues that are not present here. In that hypothetical, unlike this case, there would be authority, and the question would be whether the authority was lawful. The argument on the other side would be that lawful should be interpreted to apply only to procedural unlawfulness. You've held a gun to the person's head in order to extract the consent, but you could also interpret lawful to include substantive unlawfulness. So you think it goes that far, but you're saying, you know, don't worry about it. We can do that next case. Correct. And last question is, just coming back to the Judge Sutton test, which may or may not be the Judge Sutton test, how do you understand the Judge Sutton test to work with respect to hypotheticals, which I take the petitioner to have conceded, which is like billing cancer services, billing some other product entirely, not psychological services now, but something else entirely. How does the Judge Sutton test work with relationship to those hypotheticals, which also means with connection to those hypotheticals? I think the fairest answer to that question is that the opinion doesn't address that, and therefore I'm not sure how the Sixth Circuit would resolve that issue. We would suggest that if the court adopt that test, it say that those hypotheticals are covered, because it seems pretty clear that the fraud in that case is in relation to the use of the name, and also that it's without lawful authority. Right, but if I understood the Judge Sutton test to be asking, well, was there a misrepresentation with respect to identity, it would seem as though in those hypotheticals there is no misrepresentation with respect to identity. So I would think, I guess I was a little bit surprised that you came out in favor of the Judge Sutton test as your preferred way of losing, because I would think then that you lose those set of cases. Judge Sutton suggested that if no one received a particular service, and you say that someone did, that is a misrepresentation as to identity. So in the cancer services example, the clinic is providing cancer services to no one, and you're still saying you provided it to patient L. That is a misrepresentation as to identity, as he conceived of the test. I see. And then how would he separate, or somebody received psychological services from a certain level of psychologist, but not from a psychiatrist, let's say. I don't think those should be separated, Justice Kagan. That's precisely why we think we should prevail in this case. There is no principle distinction between those. Justice Gorsuch. Justice Kavanaugh. In the Court of Appeals, Judge Costa's opinion said that this Court's precedence had sent an unmistakable message that courts should not assign federal criminal statutes a breathtaking scope when a narrower reading is reasonable. And the petitioner also cites a long line of cases you're familiar with, Maranello, Van Buren, Kelly. The list goes on where we have rejected, I would say, the broadest interpretation of criminal statutes, the literal reading as compared to the ordinary reading of criminal statutes, based on fair notice concerns and not trapping the unwary or increasing the sentence on an unwary person. So why does this case not fall within that concern and with that body of precedent about reading it as broadly as you possibly could and thereby raising fair notice concerns of the kinds that Judge Costa raised? Because this statute, unlike the statutes in all of those other cases, comes into play only if someone has committed a predicate crime. In all of the cases that you've just mentioned, there was a concern that law-abiding individuals would be prosecuted by the federal government for routine conduct. For example, in Maranello, you could be prosecuted under the interpretation that was advanced there for paying someone in cash rather than paying by check. And in Van Buren, there was a concern that you could prosecute people who use their computers at work to check sports scores. There's no concern like that in this case. In this case, the statute at issue here comes into play only if a predicate federal offense has already been committed. Well, that's similar to an argument I heard years ago from the government about mens rea. Don't worry about mens rea requirements for sentence enhancements as opposed to the crime itself. And I didn't find that persuasive then because the concern about sentence enhancements is still, as Justice Gorsuch said earlier, the ordinary citizen may know, okay, well, this is going to trigger a certain amount of punishment, but you're on no notice that it could trigger a mandatory minimum or a significantly increased amount of punishment. So don't the same concerns about fair notice still kick in in that situation where you're talking about an enhancement as to the underlying crime? I don't think the same concerns kick in. I appreciate that the concerns do arise, but they're mitigated by the fact that the person has to have committed a predicate crime in the first place, and there is no danger of giving federal prosecutors the power to turn otherwise law-abiding citizens into criminals. That simply doesn't arise with respect to this statute. Justice Barrett? Justice Jackson? Can I just quickly get your understanding of the Fifth Circuit's view of without lawful authority and whether or not the government endorses it? I don't take the Fifth Circuit to have taken a view on without lawful authority. It wasn't raised at the panel stage, and at the en banc stage, all the Fifth Circuit did was say we affirm for the reasons given in the panel opinion. Oh, so you don't think they held that without lawful authority means to use it to commit a crime? No, I don't think they did. Is that the government's position or no? No, that's not the government's position. What is the government's position? The government's position is that a person acts without lawful authority only if he uses the means of identification in a manner that requires prior authorization, that he either didn't get that authorization or the authorization was conferred in an invalid way. And I think that limitation eliminates a lot of the parade of horribles that arises on the other side, so circumstances in which you're simply addressing someone by his name or mentioning his name or talking about him or making a statement about him wouldn't be covered by this phrase because those don't require prior authorization in the first place. So you can end where you started, which is with the waiter hypothetical. The government's view is that all of those would be without lawful authority. Those would be without lawful authority because you do need someone's permission to charge his credit card in the same way you do need someone's permission to bill something to his Medicaid number. Thank you. Justice Sotomayor? A couple of follow-ups. In the Bond case, clearly the woman who poisoned the mistress or the person she suspected of being a mistress wasn't a law-abiding citizen, and we still narrowed that statute, correct? Correct. Number two, following up on what Justice Jackson just said, if I disagree with you reading the record, because I have, it was very clear that the Fifth Circuit said without lawful authority exists whenever someone uses the means of identification of another person to commit a crime. You argued the same thing. That's the jury instruction that was given to the jury. If this is my view of the evidence, where does that leave us on this case? Do we vacate and remand and say that's too broad? Now, pay attention to what the scope of without lawful authority might mean. It's unsatisfying, by the way, but is that what we do? No. You would still rule for us, and the reason is that they haven't challenged the jury instructions here. In fact, they agreed to the jury instructions that were given. This is a sufficiency of the evidence challenge. The issue is whether the evidence supports findings on each of the elements of the crimes, not whether the jury was instructed properly. Thank you, Counsel. Mr. Fisher? Thank you. I'd like to first address a couple things about the two different components of the statutory text that we've been discussing today and then turn to consequences. So first, on the statutory text, we've talked about the in relation to element and the without lawful authority element. On in relation to, forgive me, but I'll turn back to Judge Sutton's opinion and point out at page 628 of that opinion in describing the Sixth Circuit's prior case, he said the Sixth Circuit held quite correctly that the claim of the stretchers did not fall within the statute. So he not only discussed the prior case, he endorsed it. And that paragraph says, if the lie just goes to about the nature of the services provided, not who received them, it is not falling within the in relation to element of the statute. So we think that would resolve the case in our favor in a way that Judge Sutton has specifically endorsed. As to without lawful authority, I think Justice Sotomayor is right. The only argument ever made below was the one you described with the J31 and 32, and Justice Jackson at pages 66A and 67A of the petition appendix, the Fifth Circuit panel decision, which was adopted by the embanked court quite directly, adopts that reading of the without lawful authority element in this case and applies it to Mr. Dubin's conduct. And then the embanked court, of course, accepts that. So the Sixth Circuit quite directly did address that issue and got it wrong. Now, we heard a suggestion in the brief, and I just heard it a moment ago, that the government maybe doesn't agree anymore with the argument it made below that any use to violate the law constitutes without lawful authority. But with due respect to my friend, I just don't understand what their alternative test means. No court has ever adopted it. And this notion that you need to have permission, it's only something that you need to have permission for to do, I don't even understand how that works with respect to the one example we did use in the briefs, which is putting a name on an envelope or making a phone call, because things like the do not call list and junk fax restrictions under federal law do require permission to send those sorts of things. So I don't understand, as we said in our reply brief, how that test would even work. And at the very least, you'd just be interjecting another layer of vagueness and difficulty into the statute. So we think it's best to stick with what the government argued below and what the Fifth Circuit decided. Now let me turn to the scope and the consequences of this very broad position that the government has endorsed. And I think the government stood here and said, yes, every mischarge by a waiter, a cashier, et cetera, that violates the mail-or-wire fraud statute would fall within our understanding. That's an incredibly broad sweep. I heard some resistance about the health care fraud statute. So there was an admission that virtually every provider case would fall within the statute. Now the government in its brief tried to give a few other examples, and we answered those in our reply brief. And this is at pages 18 and 19 of our reply brief. We point out that the examples the government gave would require the use of somebody's name. So, again, I heard today the notion of applying for Medicare benefits and then lying or Medicaid benefits and lying about your age or your smoking. But to do that application, you have to list your doctor, your employer, a contact at your employer. You're putting names all over that form. And the form won't be approved if those names are not there. So exactly the same argument the government's making today would apply to the only hypotheticals that the government has put forth in a brief. And some of these things were new today. I don't know every last detail. But I bet you if you run down the details, you'll find names on those forms as well. And I think that leads me to the consequences and the real-world consequences for this. So it's not just that a mandatory minimum comes into play where it wouldn't otherwise come into play. But what you would be doing by accepting the government's position is creating a world where every simple fraud prosecution is now also chargeable as aggravated identity theft. And what happens then? Well, in a world of plea bargaining, that becomes, in the words that other prosecutors have used, powerful plea bargaining leverage we can use to procure quick pleas in federal fraud cases. We're not talking about an aggravated penalty for actually misusing somebody's name. We're talking about, in practical terms, a very strong cudgel to use against people to procure pleas in very low-level fraud cases. And that's not what Congress was aimed for in this case. Congress wasn't trying to create a two-year mandatory minimum all of a sudden for ordinary fraud offenses. It was aimed at a particular new form of misconduct that's simply not present in the words aggravated identity theft and on the facts of this case. If there are no further questions, I'll submit. Thank you, Mr. Fisher. Mr. Suri, the case is submitted.